351 F.2d 778
 122 U.S.App.D.C. 81
 WESTERN AIR LINES, INC., Petitioner,
v.
CIVIL AERONAUTICS BOARD, Respondent, United Air Lines, Inc.,
City of Kansas City, Missouri, Continental Air
Lines, Inc., Northwest Airlines, Inc.,
Pan American World Airways,
Inc., Intervenors.
The CITY OF SAN DIEGO, San Diego Unified Port District, and
San Diego Chamber of Commerce, Petitioners,
v.
CIVIL AERONAUTICS BOARD, Respondent, United Air Lines, Inc.,
Northwest Airlines, Inc., Pan American World
Airways, Inc., Intervenors.
 Nos. 18305, 18313.
 United States Court of Appeals District of Columbia Circuit.
 Argued May 12, 1964.
Decided June 3, 1965.
 
 Mr. L. Welch Pogue, Washington, D.C., with whom Messrs. George C. Neal, Calvin Davison, Washington, D.C., and John W. Simpson, Los Angeles, Cal., were on the brief, for petitioner in No. 18305.
 Mr. Aaron W. Reese, San Diego, Cal., for petitioners in No. 18313. Mr. C. Emerson Duncan, II, Washington, D.C., also entered an appearance for petitioners in No. 18313.
 Mr. O. D. Ozment, Associate General Counsel, Litigation and Legislation, Civil Aeronautics Board, with whom Asst. Atty. Gen. William H. Orrick, Jr., Messrs. John H. Wanner, General Counsel, Joseph B. Goldman, Deputy General Counsel, Frederic D. Houghteling, Attorney, Civil Aeronautics Board, and Lionel Kestenbaum, Attorney, Department of Justice, were on the brief, for respondent.
 
 
 1
 Mrs. Dorothy F. Fardon, Kansas City, Mo., was on the brief for intervenor, City of Kansas City, Mo., in No. 18305.
 
 
 2
 Messrs. Robert L. Stern, Chicago, Ill., and Hubert A. Schneider, Washington, D.C., were on the brief for intervenors United Air Lines, Inc. and Pan American World Airways, Inc.
 
 
 3
 Messrs. John W. Cross, Andrew T. A. MacDonald, Washington, D.C., and Herman F. Scheurer, Jr., were on the brief for intervenor Continental Air Lines, Inc., in No. 18305.
 
 
 4
 Messrs. James L. Kaler and Robert N. Duggan, Washington, D.C., also entered appearances for intervenor Northwest Airlines, Inc.
 
 
 5
 Before WASHINGTON, DANAHER and BURGER, Circuit Judges.
 
 DANAHER, Circuit Judge:
 
 6
 The Board by its Order E-16285, adopted December 7, 1960, contemplated additional air service between Hawaii and California. Amendments to Western Air Lines route 13 redesignated San Diego as an intermediate point and added Honolulu as a terminal point. Further changes in Western's route 35 added Honolulu as a terminal point to that route. Nearly three years later, the Board terminated its Transpacific Route Case, proceedings by Order E-20178, served November 8, 1963, and thereafter denied Western's motion for reconsideration. Western has sought review, contending in essence that the Board's action was arbitrary and capricious in that the Board acted in 1963 without findings and without revoking its 1960 findings. Western argues that the Board has acted contrary to law since in 1960 it had obviously found that public interest, convenience and necessity required additional capacity and scheduled service for the California-Hawaii routes. Moreover, in 1960, the Board had found Western to be fit and able to render that service. Western insists that as a matter of law it is entitled to an order which would compel the Board to reissue certificates conformably to the 1960 findings, as set out in the Board's opinion to accompany Order E-16285.
 
 
 7
 Pursuant to Presidential request in February 1959, the Board in its Transpacific Route Case initiated an examination of air service needs of the entire Pacific area. The scope of the inquiry included problems as to air service between the mainland of the United States and Hawaii, then a Territory, and between the mainland and other points in the Far East. When Hawaii became a State in August, 1959, services between the mainland and Hawaii became interstate air transportation within the meaning of section 101(21)(a) of the Federal Aviation Act of 1958.[1] The Board thus was free to act. As to such services the Board prepared its 'Domestic Decision,' as of December 7, 1960, with Western's amended certificates to become effective on March 20, 1961. At the same time the Board released its separate 'International Decision' recommending that the President approve new international route awards in the Pacific area.
 
 
 8
 The Board's opinions and orders were not served upon the parties until January 19, 1961. The previous day, the President, as he was authorized to do by section 801 of the Act,[2] had disapproved the Board's recommendations as to international air transportation. His notification to the Board coincidentally expressed the 'hope' that the Board would reconsider its decision to authorize additional service between the mainland and Hawaii.
 
 
 9
 Faced with Presidential disapproval of the international phase, the Board stayed its December, 1960 decision which as noted had favored certification of Western to accomplish air transportation between California and Hawaii.
 
 
 10
 Various subsequent proceedings engaged the attention of the Board,[3] but at no time was an award of routes to Western allowed to become effective. Finally the Board by its Order E-20178 adopted August 7, 1963[4] and served on November 8, 1963, simply terminated the 'domestic' phase of its Transpacific Route Case. Western's motion for reconsideration was denied by the Board's Order E-20534 adopted March 3, 1964, with two members still expressing the opinion that a California-Hawaii route should have been awarded to Western in accordance with the Board's original 3 to 2 decision of December 7, 1960.
 
 
 11
 The Board's supplemental opinion and order No. E-20178 recited that oral argument covering the reconsideration aspects of both the international and the domestic phases had been heard by the Board. Its conclusion as to the mainland-Hawaii phase was said to have been based upon the proposition that both the domestic and the international issues were 'intimately intertwined.' The Board asserted
 
 
 12
 'that a decision attempting to determine the purely domestic issues without regard to the international requirements of Hawaiian service could do serious damage to the freedom of the Board and the President in establishing a balanced and effective international route pattern in the Pacific, and conversely, that the sound development of a coordinated pattern of domestic services between the mainland and Hawaii cannot be accomplished without a full assurance as to what the transpacific route structure will ultimately be. * * * We are fully aware that, Hawaii having become a State, the Board under the Act has plenary jurisdiction to determine the mainland-Hawaii route pattern and that the President's comments in his January 18, 1961 memorandum respecting the Board's domestic decision are not binding upon the Board. However, we believe that it would not be an act of sound judgment and discretion on our part to exercise this jurisdiction at this time, not knowing what the next reexamination of the Pacific area route complex will produce.'
 
 
 13
 Thus it was that the Board 'terminated' the domestic phase of its Pacific area study notwithstanding its realization that there was not to be 'an updating of the record in the international phase within the next several years.'
 
 
 14
 There were no findings in derogation of the Board's findings and conclusions set forth in its December, 1960 Domestic Decision and Order No. E-16285 that the public interest, convenience and necessity as to Hawaii and the California gateways then required the certification of the California-Hawaii routes.[5] There were no findings that Western by November, 1963 was no longer fit, able and willing to serve those routes. The Board in December, 1960 had applied proper standards, 'determined in hearings after notice.'[6] Here the Board in 1963 had not acted 'after a searching inquiry.'[7] We have no more than the Board's ipse dixit, without findings or record evidence to justify its order of termination. What the Board in 1960 had unanimously found to be the public interest considerations as to service needs was simply waved aside in 1963. The Board members in 1960 by a 3-2 vote had differed only as to the choice of carrier. Yet in 1963 'the mainland-Hawaii phase of this proceeding' was 'terminated.'[8]
 
 
 15
 On the record material before us as stipulated by the parties, it would seem beyond question that the public need for additional air transportation between California and Hawaii was overwhelmingly established in the proceedings concluded in 1960. In that respect it is reasonable to deduce that the public interest has been allowed to suffer and may have become intensified[9] over the intervening years.
 
 
 16
 As to the carrier's claim of right to certification, a different problem is presented. Were we reviewing an order which had simply disposed of the competing interests of Western Air Lines and Continental, for example, or of Western and Northwest Airlines, Inc., we could agree that the Board's 1960 conclusion that Western should be selected over other carriers to render that service should not be disturbed. Such a determination found support in the Supreme Court in Civil Aero. Bd. v. State Airlines[10] even where Piedmont Aviation, Inc. had not applied for the specific routes assigned to it.
 
 
 17
 Again, if the earlier order providing for the issuance of certificates to Western had actually become effective, we would have had a very different situation.[11] On this record and in the circumstances shown, we can not order the Board now to issue certificates in accordance with its 1960 opinion and order. We have been granted 'exclusive jurisdiction to affirm, modify, or set aside the order complained of, in whole or in part, and if need be, to order further proceedings by the Board or Administrator.'[12] Board counsel on brief contend that should we perceive error on the Board's part, 'the indicated course of action plainly is to remand the case to the Board for further proceedings.' That step will be taken.
 
 
 18
 Our study has convinced us that the Board's unanimous 1960 conclusion that mainland-Hawaii service was required by the public convenience and necessity[13] should not be ignored by this court, and should not have been ignored by the Board in 1963. The Board itself had recognized in its supplemental opinion accompanying the order under review that pursuant to the Act the Board 'has plenary jurisdiction to determine the mainland-Hawaii route pattern,' yet the Board stated it would refuse to exercise that jurisdiction.
 
 
 19
 We have been shown no acceptable basis upon which the Board here purported summarily to 'terminate' so important a proceeding which lies squarely within its jurisdiction. Certainly the mere 'hope' of the President or his advisers is no predicate for the Board's arbitrary refusal to act on the 'Domestic' phase. Assuredly the Board had defined no administrative standards[14] by which bona fide applicants for certification might have been given to suppose that any such result could be possible. The Hearing Examiner's findings, the Board's own studies, the record so thoroughly established by the various participants, the unanimous findings of the entire Board, all demonstrated that the public interest and necessity required a mainland-Hawaii route. Thus the Board had exercised a judgment as to 'what new routes should be established, if any.'[15] In the face of that record, the Board simply flouted the congressional mandate. The statute says:
 
 
 20
 'The Board shall issue a certificate authorizing the whole or any part of the transportation covered by the application, if it finds that the applicant is fit, willing, and able to perform such transportation properly * * * and that such transportation is required by the public convenience and necessity; otherwise such application shall be denied.'[16]
 
 
 21
 The mandatory[17] congressional directive is explicit. It deals clearly with certification of the interstate air transportation which lies within the jurisdiction of the Board. If the Board agreeably to the statute had awarded an effective certificate to Western, its order would have been subject to review upon proper challenge and agreeably to recognized procedures. Even a denial of the applications of others would have been subject to orderly test. Here were no findings; there was no well-grounded revocation of the findings previously made. Whatever the facts or whether the Board had misconceived the law[18] would have remained in obscurity had Western not asked the aid of this court. It has now been made to appear that at the very least the Board's action was a disservice to the administrative process which increasingly affects the economic life and the well-being of the nation, not to mention the rights of the parties before the Board. They had participated in good faith in a proceeding instituted by the Board itself. In short, the public interest, the exemplification of which has been entrusted to the Board, is not to be dealt with in so cavalier a manner.
 
 
 22
 We reverse that portion of the Board's order which reads:
 
 
 23
 '2. That the mainland-Hawaii phase of this proceeding be and it hereby is terminated.'
 
 
 24
 We remand the case to the Board so that it will exercise the jurisdiction so clearly required of it with respect to the 'Domestic' phase and make its determinations[19] in light of this opinion and of our directions as follows:
 
 
 25
 (1) If the Board shall decide (a) that the present record has established that a public interest need for mainland-Hawaii air transportation still exists irrespective of international route considerations, the Board will next determine (b) whether or not Western is presently 'fit, willing, and able to perform such transportation properly.'
 
 
 26
 (2) If the Board shall decide that mainland-Hawaii service can not be authorized because of international air transportation requirements, it will make its determination properly derived from and supported by facts either from the record already amassed or by such supplemental record as may be required to establish an adequate basis for the Board's conclusion and for review by this court.
 
 
 27
 (3) In its compliance with any of the foregoing directives the Board is free to reopen the present record and to supplement the same to the extent necessary to establish an adequate basis for its ultimate conclusions.[20]
 
 
 28
 (4) The Board will within 60 days submit its supplemental record to this court which meanwhile will retain jurisdiction.[21]
 
 
 29
 Remanded.
 
 WASHINGTON, Circuit Judge (concurring):
 
 30
 In its 1960 proceeding the Board found that a third airline service was needed between California and Hawaii, and authorized Western Airlines. This determination was based principally on a finding that the two carriers operating on this route were overloaded. The finding of a need for the new service did not rely on the international Pacific routes authorized by the Board at the same time in another order.
 
 
 31
 The proposed international routes were disapproved by the President. The Board thereupon suspended Western's authorization. In 1963 the Board terminated the domestic proceeding concerning the California-Hawaii route, in effect denying Western's application. It seems to me that the reason given by the Board-- that this route should not be treated separately from the international Pacific routes-- would be sufficient to justify its action if it were supported on the record. However, the Board's conclusion has no such support. Cf. Universal Camera Corp. v. National Labor Relations Board, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951). There was no testimony setting forth the disadvantages that allocation of the domestic route at this time would cause when the international routes are considered. Thus, we cannot sustain the Commission's conclusion that these disadvantages outweigh the advantages to the public found in 1960 after full hearings to flow from the grant of authorization to Western. I concur in the remand for further findings on this matter. The Commission's Supplemental Opinion of November 8, 1963, stated its 'intention to undertake a reexamination of the transpacific route pattern at a suitable time in the near future.' Perhaps this will be a suitable occasion to reconsider the whole issue.
 
 
 
 [1]
 72 STAT. 738, 49 U.S.C. 1301(21)(a) (1958)
 
 
 [2]
 72 STAT. 782, 49 U.S.C. 1461 (1958)
 
 
 [3]
 After member Bragdon's term had expired, affirmative action at various stages was deemed to have failed because of an equal division between the remaining four members
 
 
 [4]
 Member Murphy broke the existing tie and voted for this action. Although Western contends otherwise, we think be was entitled to vote. United Air Lines, Inc. v. C.A.B., 108 U.S.App.D.C. 220, 223, 281 F.2d 53, 56 (1960). Apparently unchallenged before the Board, the minutes of June 28, 1963, disclose that Vice Chairman Murphy 'had familiarized himself with the record and was qualified and prepared to vote on the issues in the case.'
 
 
 [5]
 See the Board's comprehensive opinion, 32 C.A.B. 928 (1961)
 
 
 [6]
 Civil Aero. Bd. v. State Airlines, 338 U.S. 572, 578, 70 S.Ct. 379, 94 L.Ed. 353 (1950)
 
 
 [7]
 Id. at 581, 70 S.Ct. 379. In view of our disposition of the Western Air Lines petition, we do not deal separately with the petition in our case No. 18313 filed by the City of of San Diego which with respect to the public interest aspect had argued that 'San Diego was the only major metropolitan area on the west coast without direct air service to any point in the Pacific, including the State of Hawaii.' San Diego further pointed out that the Board's original decision had noted that Western was willing and eager to offer its services and 'would have ample backup traffic to support the services.' The San Diego argument before the Board continues: 'Nothing has happened since December 7, 1960 to change this statement as found in your order except one thing: The traffic that would support the service has shown a significant increase.'
 
 
 [8]
 Compare Minneapolis Gas Co. v. Federal Power Com'n, 111 U.S.App.D.C. 16, 294 F.2d 212 (1961). Here the expense to the participants is said to have run into millions with hearings over several months, requiring a transcript of some 9,000 pages and more than 1,000 pages of exhibits and briefs. As of December 7, 1960, there were some seven air lines concerned with the Domestic Phase of the proceedings as well as many cities such as San Diego
 
 
 [9]
 See note 8 supra
 
 
 [10]
 Supra note 6. We had reversed the Board's order certifying Piedmont but concluded we had no authority to order the Board to certify State Airlines. State Airlines v. Civil Aeronautics Board, 84 U.S.App.D.C., 374, 174 F.2d 510 (1949). Western has here contended we should now order the Board to issue appropriate certificates to permit Western to fly at least the San Diego-Honolulu route
 
 
 [11]
 See Civil Aero. Bd. v. Delta Air Lines, 367 U.S. 316, 81 S.Ct. 1611, 6 L.Ed.2d 869 (1961)
 
 
 [12]
 75 STAT. 497, 49 U.S.C. 1486(d) (Supp. V, 1964)
 
 
 [13]
 72 STAT. 755, 49 U.S.C. 1371(d)(1) (1958)
 
 
 [14]
 See Friendly (Circuit Judge, Henry J.), The Federal Administrative Agencies: The Need for Better Definition of Standards, 75 HARV.L.REV. 863, 881, 1072 et seq. (1962)
 
 
 [15]
 Civil Aero. Bd. v. State Airlines, supra note 6, 338 U.S. at 577, 70 S.Ct. at 382
 
 
 [16]
 401(d)(1) of the Act, 72 STAT. 755, 49 U.S.C. 1371(d)(1) (1958). In light of this statutory command the Board should not be 'allowed to improvise on the powers granted by Congress in order to preserve administrative flexibility.' Civil Aero, Bd. v. Delta Air Lines, supra note 11, 367 U.S. at 330, 81 S.Ct. at 1621
 
 
 [17]
 On the other hand, when Congress intended that the Board's action be discretionary it was careful to say, not 'shall,' but 'may':
 'In the case of an application for a certificate to engage in temporary air transportation, the Board may issue a certificate authorizing the whole or any part thereof for such limited periods as may be required by the public convenience and necessity * * *.' 72 STAT. 755, 49 U.S.C. 1371(d)(2) (1958).
 And see State Airlines v. Civil Aeronautics Board, 84 U.S.App.D.C. 374, 380, 174 F.2d 510, 516 (1949), reversed on other grounds, 338 U.S. 572, 70 S.Ct. 379, 94 L.Ed. 353 (1950).
 
 
 [18]
 Securities and Exchange Comm'n v. Chenery Corp., 318 U.S. 80, 94, 63 S.Ct. 454, 87 L.Ed. 626 (1943). As Mr. Justice Frankfurter there pointed out, we would not set aside Board action because we might have made a different determination had we been empowered to do so. Western, for example, has asked for the issuance of a certificate for air transportation at the very least between San Diego and Hawaii. We think we may not so order, even though the Board had explicitly found that 'San Diego passengers bound for Hawaii must use a circuitous, inconvenient connecting service at Los Angeles or San Francisco, (and) Western would be able to provide San Diego with first nonstop service to Honolulu.'
 
 
 [19]
 'The record shall show the ruling upon each such finding, conclusion, or exception presented. All decisions * * * shall become a part of the record and include a statement of (1) findings and conclusions, as well as the reasons or basis therefor, upon all the material issues of fact, law, or discretion presented on the record; and (2) the appropriate rule, order, sanction, relief, or denial thereof.' 60 STAT. 242, 5 U.S.C. 1007(b) (1965)
 
 
 [20]
 Ibid.; cf. North Central Airlines, Inc. v. Civil Aeronautics Bd., 105 U.S.App.D.C. 207, 210-211, 265 F.2d 581, 584-585, cert. denied, 360 U.S. 903, 79 S.Ct. 1285, 3 L.Ed.2d 1259 (1959); Saginaw Broadcasting Co. v. Federal C. Com'n, 68 App.D.C. 282, 287, 96 F.2d 554, 559, cert. denied, 305 U.S. 613, 59 S.Ct. 72, 83 L.Ed. 391 (1938)
 
 
 [21]
 Northeast Airlines, Inc. v. C.A.B., 331 F.2d 579, 589 (1 Cir. 1964)