**CARIBE GENERAL ELECTRIC, INC. et al., Petitioners,**

**v.**

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

**No. 6455.**

United States Court of Appeals First Circuit.

Heard Jan. 14, 1966.

Decided March 8, 1966.

Warren F. Farr, Boston, Mass., with whom Francis J. Vaas, Roger K. Evans, Boston, Mass., Donald M. Hall, San Juan, P. R., Stanley B. Frenze, Plainville, Conn., Ropes & Gray, Boston, Mass., and McConnell, Valdes & Kelley, San Juan, P. R., were on brief, for petitioners.

Warren M. Davison, Atty., N. L. R. B., Washington, D. C., with whom Arnold Ordman, Gen. Counsel, Dominick L. Ma-

noli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, and Martin R. Ganzglass, Atty., N. L. R. B., Washington, D. C., were on brief, for respondent.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

ALDRICH, Chief Judge.

This is a petition to review a decision of the National Labor Relations Board to which the Board responds by seeking enforcement. For purposes of this decision Caribe General Electric, Inc. and another, hereafter, jointly, petitioner, constitute a single employer doing business in Puerto Rico. The charge, filed in December 1963 by a discharged employee, Marquez, asserted Marquez's discharge in violation of sections 8(a) (3) and (1), and other 8(a) (1) matters. 29 U.S.C. § 158(a) (1) and (3). Two unions, the IUE,[1] and a local independent union formed by Marquez, had for some time been making rather ineffectual organizational attempts at petitioner's plant. The trial examiner found against petitioner as to the discharge, found an unfair labor practice with respect to a wage increase, and found petitioner had made a threat of loss of benefits in case of unionization. The Board, without opinion, affirmed the trial examiner's decision, except with respect to the wage increase. 149 N.L.R.B. No. 137.

We need not deal with much of the several hundred pages of record. With regard to Marquez, his increasing poor health was a clearly proper ground for discharge. The trial examiner's reasons, and, presumably, the Board's, for concluding the discharge was improperly motivated, were in some measure picayune, and in some lacked any apparent probative force. Nevertheless, while we are left with the suspicion that a truly open-minded trial examiner would not have decided against petitioner,[2] we cannot quite say that there was not a sufficient basis to conclude that petitioner's dominant reason was the improper one. In so holding we do not intend to depart from the principle that there must be some affirmative, rational basis on which to sustain the Board's burden of proof. Cf. NLRB v. Lowell Sun Pub. Co., 1 Cir., 1963, 320 F.2d 835, 843.

The other part of the decision, however, is more than we can support. Petitioner had never been unionized. It was frankly, and openly, outspoken against unions. In its weekly house organ, in which there was a "President's Column," it frequently pointed out its view that its employees did not need a union, and had "much to lose" by unionization. Petitioner was careful, however, to suggest only those losses, such as strikes, expensive dues, and the experiences of employees elsewhere with dishonest unions, which might be expected to result from the activities of the union itself. See Bok, The Regulation of Campaign Tactics in Representation Elections Under the National Labor Relations Act, 78 Harv.L.Rev. 38, 78–79 (1964). The right given an employer by section 8(c) to express its "views, argument, or opinion * * * if such expression contains no threat of reprisal * * *," we equate with what in other branches of the law is described as the right of fair comment. Although liberal in its exercise, we do not think petitioner exceeded it. Cf. NLRB v. Collins & Aikman Corp., 5 Cir., 1964, 338 F.2d 743; NLRB v. Transport Clearings, Inc., 5 Cir., 1962, 311 F.2d 519; NLRB v. Threads, Inc., 4 Cir., 1962, 308 F.2d 1. Furthermore, petitioner explicitly assured its employees that its favorable employment programs would not be affected by the unionization campaign. It is

---

1. International Union of Electrical, Radio and Machine Workers, AFL-CIO.

2. Our doubts of the trial examiner's impartiality are based in part upon a review of his heads-the-union-wins, tail-the-employer-loses analysis of the wage increase issue, under which, so far as we can see, whatever the employer had done would have been wrong. The Board eliminated this matter from the proposed order, discreetly "find[ing] it unnecessary to pass upon."

reasonably apparent that the trial examiner, however, was not in full sympathy with this right, and his opinion is preoccupied with the details of petitioner's statements. In this posture he seized upon one incident in which the petitioner allegedly threatened its employees with reprisals in case of unionization.

The alleged incident was this. Petitioner had a contributory insurance plan. Marquez's union advertised that if it were chosen it would require the petitioner to pay all of the premiums. Petitioner made no response to this, but an employee, Cruz, testified, and the trial examiner found, that at a meeting with a small group of employees—petitioner had some 800 employees, but met with them from time to time in groups of 25 or 30—petitioner's president, Johnson, was asked what would happen to the insurance benefits if there were unionization. The trial examiner found that Johnson replied that "some of the benefits would be reduced."

Johnson and his assistant denied that this statement was made. Two other employees, present at the meeting and called by the Board, did not support Cruz. Cruz, himself, was a witness of little force. On cross-examination he agreed that the full question to which the president had replied was: "If the company has to pay for all of the insurance program itself, it is possible that the company will have to reduce some other benefit of the insurance plan?"

■ It is hard to believe that this obviously sophisticated and well instructed employer, who previously had made it plain that there would be no reprisals, would have stated what Cruz testified to on direct examination, and to a considerable extent on redirect. We think it far more likely that Johnson's statement was in accord with Cruz's testimony on cross. This would not have been a threat at all. Obviously, if the employees, under Marquez's guidance, were no longer to contribute to the insurance premium, and the employer were to continue its present payments, the total benefits would be less. But even if in this one instance petitioner said something which could have led some of a small group of employees to misunderstand its position in one matter in case of unionization, its conduct must be viewed rationally as a whole. Absolute perfection is not to be expected. On the record this alleged incident seems to us a clear example of *de minimis*. Cf. NLRB v. Mississippi Products, Inc., 5 Cir., 1954, 213 F.2d 670, 674; NLRB v. Grunwald-Marx, 9 Cir., 1961, 290 F.2d 210.

A decree will be entered enforcing paragraph 1(c), and paragraph 2, as appropriately modified, of the order of the Board, and vacating the balance.