**INTERNATIONAL WOODWORKERS OF AMERICA, AFL–CIO, LOCAL 3–10, Petitioner,**

**v.**

**NATIONAL LABOR RELATIONS BOARD, Respondent,**

Long Lake Lumber Company, Intervenor.

No. 20526.

United States Court of Appeals
District of Columbia Circuit.

Argued April 14, 1967.

Decided June 15, 1967.

Petition for Rehearing Denied
Aug. 17, 1967.

Mr. John Silard, Washington, D. C., with whom Mr. Joseph L. Rauh, Jr., Washington, D. C., was on the brief, for petitioner.

Mrs. Nancy M. Sherman, Atty., N.L. R.B., with whom Messrs. Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, and Marcel Mallet-Prevost, Asst. Gen. Counsel, were on the brief, for respondent.

Mr. George J. Tichy, Spokane, Wash., was on the brief for intervenor.

Before McGOWAN, TAMM and LEVENTHAL, Circuit Judges.

McGOWAN, Circuit Judge:

This statutory review of an order by the National Labor Relations Board presents no disputed matters of fact. They were stipulated by the parties, and the issues they raised were resolved by the Board without the intervention of a trial examiner. The Board found a violation of Section 8(a) (5) by the intervenor-employer, but it dismissed the complaint because it thought no remedial action was necessary. This conclusion purported to be derived from the fact that only one of some 16 to 18 employees was affected by the violation. Because, on this record, the Board's disposition seems to us at variance with the Board's duty under the Act, we set aside the dismissal of the complaint and remand the order for reconsideration by the Board, in the light of this opinion, of its denial of a remedy.

I

The petitioner, International Woodworkers of America, AFL–CIO, Local 3–10 ("Union"), has been the recognized collective bargaining representative since 1938 of the production and maintenance workers of the intervenor, Long Lake Lumber Company, of Spokane, Washington. The contract in effect at the relevant times here involved ran from December 1, 1963, to June 1, 1966. It provided expressly that the production workers were to have a regular workweek of five eight-hour days, Monday through Friday. It granted premium pay for work performed at other times. The record shows that for at least five years prior to July 13, 1965, the employer utilized the same workweek for its maintenance force. On occasion it had varied the schedule of the workday, but only within the Monday to Friday limits. Because the employer found that the maximum efficiency in the maintenance of some of its machinery was not achieved by having its maintenance employees on the job at the same time as its production people, it directed, on July 12, 1964, one of the former to work from Tuesday through Saturday with no change in the hourly rate. This was done without prior consultation with, or the consent of, the Union. When the Union learned of this change a few weeks later, it complained to the employer. Discussions between the two failed to effect any accommodation by agreement; and the Union filed an unfair labor practice charge which eventuated in the Board order under review.

The employer represents to us that there was no violation; and that, accordingly, the question of a remedy is academic. It insists that the Board was without jurisdiction to adjudicate an 8 (a) (5) violation because the question was solely one of contract interpretation. It asserts that the silence of the contract on the workweek of maintenance workers, as distinct from the express provision made for production workers, left the employer free to do what it did. In any event, the employer points to its willingness to discuss the change with the Union after it had been effected, and concludes that there could have been no default in its obligation to bargain with the Union over wages and conditions of employment.

■ We think the Board was well within the orbit of its statutory authority in finding a violation. Although the contract did not address itself specifically to maintenance employees in respect of the workweek, the subject was

an appropriate subject of bargaining, Local Union No. 189, Amalgamated Meat Cutters, etc. v. Jewel Tea Co., 381 U.S. 676, 691, 85 S.Ct. 1607, 14 L.Ed.2d 640 (1965); and the record discloses a history of according the maintenance workers a Monday-to-Friday workweek which rendered unilateral change incompatible with the bargaining obligation. In 1956, and again in 1957, the employer proposed to the Union a contract provision giving it the right to assign weekend work at straight time. The proposal failed to ripen through the bargaining process into a contract term. The 1963–1966 contract contained no management-prerogative clause that might conceivably embrace this right. Under these circumstances, the employer's willingness to bargain after the fact—and on the Union's time in the sense that the employee in question was not meanwhile restored to his Monday-Friday schedule or given premium pay—did not repair the employer's default in its statutory duty to bargain with the Union about the terms and conditions of employment.

■ To the extent that the Board looked to the contract to see whether it committed the power to the employer to vary the workweek and thereby removed that subject from the scope of the bargaining obligation, it is now firmly established that the Board may do so. NLRB v. C & C Plywood Corp., 385 U.S. 421, 428, 87 S.Ct. 559, 17 L.Ed.2d 486 (1967). The Board's action in this regard here was within the ambit of inquiry permissible to it in the discharge of its duty to pass upon an unfair labor practice charge of the kind before it in this case; and its finding as to the effect of the contract was wholly supportable. Timken Roller Bearing Co. v. NLRB, 325 F.2d 746, 751, 2 A.L.R.3d 868 (6th Cir. 1963).

II

■ We turn to the Union's protest that, having unequivocally found a violation of 8(a) (5), the Board could not withhold a remedy and dismiss the complaint on any de minimis principle. We deal only with the issue in the posture in which it was placed by the Board's own characterizations. The Board did not say that, taking all the circumstances into account, there was no violation. It said, rather, that there was a violation; and the Board has not argued to us that either its word or its deed in this regard has been misinterpreted.[1] It chose not to enter a remedial order, as it intimated it would have done if more than one employee had been involved. It may be some comfort to this one employee to reflect that he may, in due course, be provided with some companionship on his lonely Saturday shift if the alteration in his own assignment goes uncorrected. But this is perhaps scant solace to him for the absence of premium pay or the loss of Saturday pleasures. And it surely does not lift from the Union the shadow of the unilateral imposition by the employer of terms and conditions of employment without the inconveniences of collective bargaining.

The Act (Section 10(c)) says that if the Board shall be of the opinion that

1. In its brief in this court, the Board itself describes its refusal to provide a remedy as "based on the fact that the violation shown is de minimis." Elsewhere it appears to defend this refusal on the ground that the employer "was confronted with a new and difficult problem of providing adequate maintenance for its newly-acquired and more complex mobile equipment"; and that the employer's "actions were motivated solely by its desire to cope with its legitimate business need to solve this maintenance problem." We are prepared to believe this to be the case, but it does not make the unilateral change any less a violation of the obligation to bargain about it in advance. No one has ever pretended that collective bargaining is to be equated with management efficiency. Congress, in creating that obligation, did not assume that it was to be measured by reference to such a standard. Quite other and different values were the focus of the legislative interest and concern which gave rise to Section 8(a) (5).

any person has engaged in or is engaging in any unfair labor practice, then the Board *"shall issue* and cause to be served on such person an order requiring such person to cease and desist from such unfair labor practice, and to take such affirmative action including reinstatement of employees with or without back pay, as will effectuate the policies" of the Act. (Emphasis added.) We think these words mean what they say, and that that meaning, in terms of Congressional purpose, is unmistakable. *Cf.* Western Air Lines, Inc. v. CAB, 122 U.S.App.D.C. 81, 351 F.2d 778, 783 (1965). The Board cites no instance wherein either itself or any court has read them otherwise.[2] This record, at all events, offers no basis for a new departure.

The Board has suggested to us that it would be incongruous to say that the Board must issue a remedial order which it may decline to enforce for the very reason it thought issuance was unnecessary. There are many considerations, however, bearing upon the seeking of enforcement which were not operative in the fashioning of a remedy. And it is one thing for a successful complainant to end up with a dismissed complaint, and quite another to secure a cease-and-desist order. With the latter, he at least does not have to start all over again if the violation continues or is renewed. There is no present or probable occasion for us to speculate about the degree to which the Board's discretion to seek enforcement of its orders

is untrammeled and beyond the reach of judicial scrutiny.

The judgment of this court will be entered as indicated hereinabove.

TAMM, Circuit Judge (dissenting).

I would affirm the Board's action in this case. The Board considered the entire record, the employer's long record for bargaining with the employees, as well as the practices prevalent as to working hours of maintenance employees over a period of years. The employment contract was, as the majority opinion points out, silent on the work week of maintenance employees and related only to the production workers. Discussions in 1956 and 1957 relating to the assignment of week-end work failed to result in any agreement, and it was not included, as I have indicated, in any employment contract.

The employer, having recently acquired new and more complex mobile equipment was, in fact, confronted with a new and difficult problem of providing adequate maintenance for this equipment in order that it would be available and usable for production employees. In order to solve this problem, and motivated—as the Board found—only *by a desire to cope with its legitimate business need to solve the maintenance problem,* the employer assigned a single employee for week-end work. The hours of employment of maintenance employees had been varied, changed, and modified

2. Board counsel, citing Chauffeurs, Teamsters, etc., Local No. 200 v. NLRB, 233 F.2d 233, 238 (7th Cir. 1956), urge that the Seventh Circuit has "squarely rejected" the contention that the Board may not dismiss a complaint when it finds that the violation shown is *de minimis.* The court did no such thing. In fact, the issue presented to us appears to have been ignored by the parties to that review proceeding; and the court made no mention of it. Suggesting that "the decisions of other circuits point to the same result," counsel then refer us to a number of other cases, in each of which the

particular conduct involved was held to be of such a *de minimis* character that no unfair labor practice finding could validly be predicated upon it. Not one of these decisions suggests that an otherwise valid unfair labor practice finding could be considered *de minimis* by the Board so that a remedial order need not issue. See Caribe General Elec., Inc. v. NLRB, 357 F.2d 664, 666 (1st Cir. 1966); NLRB v. Clegg, 304 F.2d 168, 176 (8th Cir. 1962); NLRB v. Grunwald-Marx, Inc., 290 F.2d 210 (9th Cir. 1961); NLRB v. Mississippi Prods., Inc., 213 F. 2d 670, 674 (5th Cir. 1954).

from time to time over a period of years. It is my view that, giving full weight to these elements, the Board was justified in declining to order remedial action. I do not believe that the Board is required by statute to take remedial steps or otherwise in cases in which, while it finds a nominal violation of section 8(a) (5), it concludes on the whole record that such action is not necessary. I believe there is an inherent discretion in the Board in this type of situation to decide whether remedial action is necessary. "In fashioning remedies to undo the effects of violations of the Act, the Board must draw on enlightenment gained from experience." National Labor Relations Board v. Seven-Up Bottling Co., 344 U.S. 344, 346, 73 S.Ct. 287, 289, 97 L.Ed. 377 (1952). In fact, the Board's order will not be disturbed by the courts "unless it can be shown that the order is a patent attempt to achieve ends other than those which can fairly be said to effectuate the policies of the Act." Virginia Electric & Power Co. v. National Labor Relations Board, 319 U.S. 533, 540, 63 S.Ct. 1214, 1218, 87 L.Ed. 1568 (1942). The Supreme Court, speaking in the *Seven-Up Bottling* case, *supra*, 344 U.S. at 352, 73 S.Ct. at 291, in defining the responsibility of the Board under section 10(c), specifically stated that the Board must "mould remedies suited to practical needs."

I am also concerned in this case about the probability of the case being completely mooted by the passage of time. The contract in effect at the time here involved expired on June 1, 1966. Neither counsel for petitioner nor counsel for the Board was able to advise the court whether this dispute had been resolved by the execution of a new contract between the employer and employees. I believe the court should have some indication that there is a presently existing controversy before passing upon the issue in the case.