UNITED STEELWORKERS OF AMERICA, AFL–CIO, Petitioner,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent.

NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

MISSISSIPPI STEEL CORPORATION, Respondent,

United Steelworkers of America, AFL–CIO, Intervenor.

Nos. 21749, 21875.

United States Court of Appeals District of Columbia Circuit.

Argued Sept. 16, 1968.

Decided Nov. 5, 1968.

Mr. George C. Longshore, Birmingham, Ala., of the bar of the Supreme Court of Alabama, pro hac vice, by special leave of court, with whom Mr. Michael H. Gottesman, Washington, D. C., was on the brief, for petitioner in No. 21,749. Mr. George H. Cohen, Washington, D. C., also entered an appearance for petitioner in No. 21,749.

Mr. Herbert Fishgold, Atty., National Labor Relations Board, of the bar of the Court of Appeals of New York, pro hac vice, by special leave of court, with whom Messrs. Arnold Ordman, General Counsel, Dominick L. Manoli, Associate General Counsel, Marcel Mallet-Prevost, Asst. General Counsel, and Elliott Moore, Atty., National Labor Relations Board, were on the brief, for petitioner in No. 21,875 and respondent in No. 21,749.

Mr. C. Dale Stout, New Orleans, La., with whom Mr. Richard C. Keenan, New Orleans, La., was on the brief, for respondent in No. 21,875.

Before BAZELON, Chief Judge, WILBUR K. MILLER, Senior Circuit Judge, and WRIGHT, Circuit Judge.

J. SKELLY WRIGHT, Circuit Judge:

After a protracted labor dispute between the United Steelworkers of Amer-

ica and the Mississippi Steel Corporation, the union complained to the National Labor Relations Board that the company had committed certain unfair labor practices. The Board found that unfair practices had been committed and granted relief against the company, including both cease and desist orders and orders for reinstatement and back pay. The union, arguing that the relief granted was insufficient, has petitioned for review of the Board's order. The Board has cross-petitioned for enforcement of its order against the company, and the company resists enforcement. The petitions were consolidated and argued together. With a single minor exception, we deny the union's petition for review and grant enforcement of the Board's order against the company. We shall consider the points raised by the parties *seriatim.*

## I

Pursuant to a Board election, the union was certified on December 17, 1965, as exclusive bargaining agent for the company's production and maintenance unit at its plant in Flowood, Mississippi. The Board has found that prior to this election a representative of the company threatened employees that a Christmas bonus would not be paid if the union won. The union did win, and the bonus was not paid.

█ The Board found that the pre-election threat constituted a violation of Section 8(a) (1) of the National Labor Relations Act, 29 U.S.C. § 158(a) (1) (1964). The company now contends that no such threat was made. One witness testified that there was a threat, while another denied it. The trial examiner and the Board believed the former, and we will not disturb their judgment of credibility.

██ The Board found that the unilateral cancellation of the bonus after the union was certified was a violation of the duty to bargain established by Section 8(a) (5), and that anti-union animus prompted the cancellation, thus

rendering it a violation of Section 8(a) (3). Payments called "bonuses" or "gifts" may be "so tied to the remuneration which employees receive for their work that they are in fact a part of it," so that they constitute wages within the meaning of the Act. N.L.R.B. v. Electric Steam Radiator Corporation, 6 Cir., 321 F.2d 733, 737 (1963). Here the testimony that a regular Christmas bonus had been paid for at least seven years was sufficient evidence to support the Board's finding that the bonus was part of the wage structure, and hence that the company had a duty to bargain with the union before eliminating it. The pre-election threats already noted were sufficient evidence of the anti-union motivation behind the bonus cancellation to support the finding of a Section 8(a) (3) violation.

## II

Contract negotiations between the union and the company began in February 1966. In four meetings during the first two months, the company largely confined itself to criticism of the union's proposed contract, though agreement was reached on a few minor points. At the fifth meeting, the company finally offered its long-requested written contract proposal. The meeting left the parties far apart, and nine days later the union voted to strike. After April 26, no meeting was held until June 22. Further meetings on June 30 and July 26 failed to produce appreciable progress, and the strike ended in early August. A final meeting between the parties took place on October 20 and lasted about ten minutes, leaving the parties as far apart as before.

During the lengthy course of this bargaining the company several times pleaded inconvenience or the absence of its negotiator as the reason for delay. It refused to supply data concerning its pension plan and the wages paid strike replacements, which the Board has found to have been pertinent to the negotiations. In July it granted a unilateral wage increase to its employees.

The Board has found the withholding of data and the unilateral wage increase to have been violations of the duty to bargain. Further, it has found that the company, by the use of delaying tactics, "was engaging in mere surface or disguised motions of collective-bargaining."

■ The Supreme Court has held that the duty to bargain prohibits "behavior which * * * directly obstructs or inhibits the actual process of discussion, or which reflects a cast of mind against reaching agreement." N.L.R.B. v. Katz, 369 U.S. 736, 747, 82 S.Ct. 1107, 1114, 8 L.Ed.2d 230 (1962). And this court has said, "What degree of cooperation is to be required, under any particular set of circumstances, from the parties at the bargaining table, is largely a matter for the Board's expertise." Fruit & Vegetable Packers & Warehousemen, Local 760 v. N.L.R.B., 114 U.S.App.D.C. 388, 389–390, 316 F.2d 389, 390–391 (1963). And good faith or its lack is a question of fact as to state of mind, subject to review only for substantial evidence. Local 833, UAW–AFL–CIO, etc. v. N.L.R.B., 112 U.S.App.D.C. 107, 114, 300 F.2d 699, 706, cert. denied, *sub nom.* Kohler Co. v. Local 833, UAW–AFL–CIO Intern. Union, etc., 370 U.S. 911, 82 S.Ct. 1258, 8 L.Ed.2d 405 (1962).

■ Applying these standards, we find that the company's dilatory bargaining tactics and its reluctance to come forward with substantive contract proposals provide sufficient support for the Board's finding of a general Section 8(a) (5) violation, particularly when viewed in the light of the refusals to supply data and the unilateral wage increase.

### III

■■ The Board found that during the course of the strike the company engaged in surveillance of striking employees, and in threats, solicitations and promises to strikers in violation of Section 8(a) (1). It is undisputed that a company supervisor sat in his car across the street from a union meeting noting the names of employees attending the meeting. The company challenges the Board's inference that this surveillance was coercive, but we find that inference reasonable. In another incident Caldwell, chairman of the board of the company, visited two strikers, asked them to come back to work, and told them that "no outsiders would tell him how to run that plant. If they did, he would close it down." The Board reasonably judged this a combined solicitation and threat to close down, improper under Section 8(a) (1). See Textile Workers Union of America v. Darlington Mfg. Co., 380 U.S. 263, 274 n. 20, 85 S.Ct. 994, 13 L.Ed.2d 827 (1965). The Board found that Ashley, the company's personnel manager, made a similar threat to close the plant to an employee. The company challenges the employee's testimony as "patently incredible," but we leave judgments of credibility to the Board. The testimony, if believed, was sufficient to support the finding of a violation. The Board found that a third threat to close the plant was made by Supervisor Dyas to another employee. Again the company challenges only the credibility of the employee, and again we leave the question of credibility to the Board.

■ Finally, the company challenges the Board's finding of an improper solicitation in the statement of a company representative to two picketing strikers that he would try to give these employees higher paying jobs. The Board found that the "offer" was made "with tongue in cheek," but that nevertheless there was sufficient implication that the company representative was seeking the employees' abandonment of the strike and return to work. We cannot say as a matter of law that the tongue in cheek nature of the offer vitiates a finding of underlying intent to solicit abandonment of the strike.

### IV

■ The Board found that the strike was caused and prolonged by the company's unfair labor practices, so that the company was obligated to reinstate all strikers in jobs the same as or of substantially equal status to those they had

held before the strike. The company contends that the strike was entirely over economic issues, so that the reinstatement rules for unfair practice strikes do not apply. Substantial evidence supports the Board's finding. The strike was called after a meeting which included a report on the problem of keeping the company at the table and the recovery of the Christmas bonus. Though economic issues were also involved in the strike, it is well settled that "if an unfair labor practice [has] anything to do with causing the strike, it [is] an unfair labor practice strike." General Drivers & Helpers Union, Local 662 v. N.L.R.B., 112 U.S.App.D.C. 323, 326, 302 F.2d 908, 911, cert. denied, 371 U.S. 827, 83 S.Ct. 48, 9 L.Ed.2d 65 (1962).

Having found the violations of Sections 8(a) (1), (3) and (5) described above, the Board has ordered the company to cease and desist from such violations, to pay the 1965 Christmas bonus to the employees, and to reinstate the strikers in the same or substantially equivalent positions with back pay. The Board has broad discretion to formulate remedies, Fibreboard Paper Products Corp. v. N.L.R.B., 379 U.S. 203, 215–216, 85 S.Ct. 398, 13 L.Ed.2d 233, 6 A.L.R.3d 1130 (1964), and the kind of relief granted here comes within that discretion.

## V

The union petitions for review of the Board's order on three points. First, it argues that the Board should have adopted the trial examiner's formula for computing the Christmas bonus due the employees, rather than leaving that computation to the compliance stage of the proceeding. Details of the order such as this are matters properly within the Board's discretion, and we will not disturb the Board's judgment.

Second, the union complains that the Board acted improperly in refusing to pass on an allegation of an individual refusal to bargain made in the General Counsel's complaint. The union cites no authority which would require the Board to consider all issues raised by its General Counsel, nor can we see any reason, in the circumstances of this case, why we should interfere with its discretion to leave possible issues undecided.[1]

Finally, the union contends that the Board erred in striking the names of three employees from the list of those entitled to reinstatement and back pay. With respect to one of these employees, James Fisher, the Board concedes that his name was deleted by clerical error. With respect to the other two, Roy Pendergrass and David Anderson, the Board contends that these employees were rehired and then resigned, so that they are not entitled to reinstatement. The record is unclear as to the status of these two employees and so, pursuant to the suggestion of counsel for the Board, we withhold enforcement of the Board's order insofar as it denies reinstatement and back pay to Anderson and Pendergrass, so that their right to reinstatement and back pay, if any, can be determined in the compliance proceedings.

So ordered.

WILBUR K. MILLER, Senior Circuit Judge, concurs in the affirmance of No. 21,749, but dissents from the enforcement of the Board's order in No. 21,875.

---

1. The union cites, without supporting argument, International Woodworkers of America, AFL–CIO, Local 3–10 v. N.L.R.B., 127 U.S.App.D.C. 81, 380 F.2d 628 (1967), and United Steelworkers of America, AFL–CIO v. N.L.R.B., 128 U.S.App. D.C. 219, 386 F.2d 981 (1967). These cases do not purport to bind the Board to decide every issue raised by the General Counsel in his complaint. They hold that, after a Board finding of an unfair labor practice, withholding of remedies on de minimis grounds may be improper where prejudice to the aggrieved party is shown.