**INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA (UAW), Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

**No. 19745.**

United States Court of Appeals, Sixth Circuit.

June 5, 1970.

Stanley Lubin, Detroit, Mich., for petitioner.

Angelo V. Arcadipane, Atty., N.L.R.B., Washington, D.C., Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Asso-

ciate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Peter Ames Eveleth, Nan C. Bases, Attys., N.L.R.B., Washington, D. C., on brief, for respondent.

Before McCREE and COMBS, Circuit Judges, and McALLISTER, Senior Circuit Judge.

McCREE, Circuit Judge.

This petition to review an order of the National Labor Relations Board presents two questions: (1) whether the Board may decline to decide if conduct which is the subject of a complaint violates the National Labor Relations Act; and (2) if it decides that such conduct violates the Act, whether the Board may decline to issue a remedial order.

The dispute arises out of petitioner UAW's attempt to organize the employees of Omni Spectra, Inc. of Farmington, Michigan. During the campaign, two company officials informed an employee that although she was permitted to engage in union activities before and after work and during lunch and break periods, such efforts must not "bubble over" into working time.

The UAW filed with the Board a number of charges against Omni Spectra, and the Office of the General Counsel issued a complaint. The Trial Examiner dismissed every charge except the one based on the remarks paraphrased above, which he found violated the Act, § 8(a) (1), 29 U.S.C. § 158(a) (1). However, he held that this violation was "too isolated to warrant the issuance of a remedial order." The Board adopted most of the findings of the Trial Examiner, but declined to decide whether the company's warning was an unfair labor practice under section 8(a) (1). 176 N.L.R.B. No. 24 (1969). "As we agree with the Trial Examiner that, in any event, the violation would be too isolated to warrant the issuance of a remedial order, we feel that no purpose would be served by passing on the correctness of this finding. We therefore decline to pass on or adopt it." *Id.* n. 2.

The union asks us to remand the case to the Board to decide whether an unfair labor practice occurred and, if so, to issue a remedial order. The Board seeks affirmance of its dismissal of the complaint, contending that its broad discretion in framing remedies, *see, e. g.,* N. L.R.B. v. Gissel Packing Co., 395 U.S. 575, 612 n. 32, 89 S.Ct. 1918, 23 L.Ed.2d 547 (1969); Fibreboard Paper Products Corp. v. N.L.R.B., 379 U.S. 203, 216, 85 S.Ct. 398, 13 L.Ed.2d 233 (1964), includes the discretion not to decide whether an alleged violation occurred and not to issue a remedial order when, in its judgment, it would serve no useful purpose.

I

We begin our inquiry whether the Board may decline to decide if conduct complained of by the General Counsel is an unfair labor practice under the Act, by examining the language of the statute. Section 10(c), 29 U.S.C. § 160(c), reads in pertinent part:

If upon the preponderance of the testimony taken the Board shall be of the opinion that any person named in the complaint has engaged in or is engaging in any such unfair labor practice, then the Board shall state its findings of facts and shall issue and cause to be served on such person an order requiring such person to cease and desist from such unfair labor practice, and to take such affirmative action including reinstatement of employees with or without back pay, as will effectuate the policies of this subchapter: * * * If upon the preponderance of the testimony taken the Board shall not be of the opinion that the person named in the complaint has engaged in or is engaging in any such unfair labor practice, then the Board shall state its findings of fact and shall issue an order dismissing the said complaint.

■■ The plain language of section 10(c) indicates that the Congress has authorized the Board to make one of two responses when it has heard a complaint

brought by the General Counsel: it must determine either that a violation occurred, or that it has not. We find no express authorization in the statutory language for the Board to abstain from deciding whether conduct violates the Act. Apparently the Board believes that the words "as will effectuate the policies of this subchapter" qualify not only its obligation to issue remedial orders but also its duty to decide whether a violation has occurred. We think it clear that the clause on which the Board relies modifies only its discretion to determine the scope of such remedial order as it may issue and does not negative the statutory mandate that it "shall" decide the existence *vel non* of a charged violation. We find no authorization in the statute for the Board's abstention from its duty to decide complaints properly brought before it.

The Board further contends that since in this case it would not issue a remedial order even if a violation occurred, it therefore need not decide the unfair labor practice charge. Obviously, this argument depends on the validity of the premise that the Board need not issue orders in such cases—a premise which has been squarely rejected by the District of Columbia Circuit. United Steelworkers, of America, A.F.L.–C.I.O. v. N.L.R.B., 128 U.S.App.D.C. 219, 386 F. 2d 981, 983 (1967). We agree with that Court, *see infra*, II.

The Board argues that even if we reject its analysis of the statute, an administrative agency should not be forced to perform useless acts. Thus the Board claims the power "where the alleged violation appears to be quite isolated," to decline "to issue a remedial order, since, presumably, such an order would be of marginal utility at best in either correcting the past infringement or in governing future conduct."

This may in fact be the situation with respect to the parties before us. The union has won its representation election, and both the Trial Examiner and the Board have ruled that the company committed no other unfair labor practices. Nevertheless, there are good reasons supporting Congress' requirement that the Board decide, even under these circumstances, whether the conduct complained of was an unfair labor practice.

First, this employer and this union may find it useful to know whether the conduct—which was considered sufficiently unfair by the Office of the General Counsel to warrant the bringing of a charge—is forbidden, so that they may avoid a repetition thereof. Also, if the Board erred (which is always possible) in its apparent finding that the violation was innocent because isolated, and if the conduct complained of was the result of ingrained anti-union animus, then the existence of an adjudication by the Board will obviously serve as a deterrent to future misconduct. Finally, Board decisions are not written solely for the benefit of the parties; they constitute a living body of law to guide the conduct of employers, employees, and unions throughout the nation.

█ Further, under the statutory scheme the Congress does not appear to have invested the Board with the kind of discretion it claims here. The discretion to determine whether complaints are sufficiently meritorious to be brought before the Board was placed solely in the Office of the General Counsel, § 3(d), 29 U.S.C. § 153(d), which is totally independent of the Board's control. Thus it would appear that *de minimis* violations—as the Board would characterize the conduct here—are to be screened out by the General Counsel. We believe this indicates a Congressional intention that only the General Counsel, not the Board, has the power to dismiss alleged violations as not warranting Board consideration.

II

█ The second question presented is whether the Board, having found a violation, must issue a remedial order. We agree with the District of Columbia Circuit that it must. International Wood-

workers of America, A.F.L.–C.I.O., Local 3–10 v. N.L.R.B., 127 U.S.App.D.C. 81, 380 F.2d 628 (1967);[1] United Steelworkers of America, A.F.L.–C.I.O. v. N. L.R.B., 128 U.S.App.D.C. 219, 386 F.2d 981 (D.C.Cir.1967); cf. Western Airlines, Inc. v. C.A.B., 122 U.S.App.D.C. 81, 351 F.2d 778 (1965) (construing similar statutory language); Freight Forwarders Institute v. United States, 263 F.Supp. 460, 466–469 (S.D.N.Y. 1967); Administrative Procedure Act, § 8(b), 5 U.S.C. § 557(b).[2] There can be no doubt about the clarity of the statutory language. Section 10(c) commands that when the Board finds that an unfair labor practice has occurred, "then the Board shall state its findings of fact and *shall issue* and cause to be served on such person *an order* requiring such person *to cease and desist from such unfair labor practice*, and to take such affirmative action including reinstatement of employees with or without back pay, as will effectuate the policies of this subchapter: * * *." (Emphasis added.) The statute authorizes (and requires) the dismissal of a complaint *only* when the Board finds that no unfair labor practice has occurred.

The Board argues that the absence of discretion in determining whether a cease-and-desist order should issue is anomalous in light of the Board's undoubted wide discretion in fashioning remedies once it decides to issue an order. The simple answer to this argument is that the decision has been made by Congress. The labor laws have been the subject of great attention by the Congress, by many employers and labor organizations, and by divers legal scholars and practitioners. There have been two substantial major revisions of the federal labor statutes since the passage of the Wagner Act in 1935, and the wording of these statutes has been the subject of exhaustive and careful consideration on these occasions. Congress could surely have written the words "may issue" if it had wished the Board to have the discretion to issue or not to issue a cease-and-desist order once it has found that an unfair labor practice has occurred.

■ Moreover, there are many valid reasons why Congress may have decided to deny the Board the kind of discretion it claims here. For example, the Congress, having proscribed certain conduct as violative of federal labor law, might reasonably require a violator to be commanded to desist regardless of the seriousness or impact of the violation. Moreover, the existence of a cease-and-desist order makes it far easier for the charging party to prevent recurrences of a violation. As Judge McGowan has written, "it is one thing for a successful complainant to end up with a dismissed complaint, and quite another to secure a cease-and-desist order. With the latter,

1. This court has not decided the *Woodworkers* issue, having expressly declined to do so because the question was not properly before it. N. L. R. B. v. Louisville Chair Co., 385 F.2d 922, 925 (6th Cir. 1968). However, the court's language in that case, particularly its quotation of part of section 10(c) and its italicization of "shall," suggest that it would have followed the *Woodworkers* rationale.

2. The cases cited by the Board as holding to the contrary, if they touch on the issue directly, do so only briefly and in passing, and are concerned primarily with other issues. Amalgamated Meat Cutters & Butcher Workmen of North America, A.F.L.–C.I.O. v. N. L. R. B., 276 F.2d 34, 38 (1st Cir. 1960); Shopmen's Local Union No. 733, International Ass'n of Bridge, Structural and Ornamental Iron Workers, A.F.L. v. N. L. R. B., 219 F.2d 874, 875 (6th Cir. 1955) (Board finding that company's "admitted refusal to discuss with the union the transfer of employees from the Northside Plant to the River Plant constituted at most a technical violation of the Act of such nature as would require no remedial order, inasmuch as no discrimination had been shown," adopted without discussion); Chauffeurs, Teamsters and Helpers "General" Local 200 A.F.L. v. N. L. R. B., 233 F.2d 233 (7th Cir. 1956) (finding that violation was so "isolated" as not to warrant remedial relief apparently not challenged by petitioner).

he at least does not have to start all over again if the violation continues or is renewed." International Woodworkers of America, A.F.L.–C.I.O. Local 3–10 v. NLRB, 127 U.S.App.D.C. 81, 380 F.2d 628, 631 (1967). We hold that the Board must at least issue a cease-and-desist order when it finds that an unfair labor practice has occurred.

### III

Accordingly, the case will be remanded to the Board, with instructions to determine whether the conduct complained of constitutes an unfair labor practice, and, if it so decides, to issue a cease-and-desist order and to grant any other such relief as it may consider proper under the Act.